IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BETTY J. SMITH,                                        No. 6:17-cv-00637-HZ

          Plaintiff,                                   OPINION & ORDER

     v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

          Defendant.


Tim D. Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, Nevada 89137

          Attorney for Plaintiff

Billy Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Martha A. Boden
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

          Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Betty J. Smith brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The issues before the Court are whether the Administrative Law Judge ("ALJ") erred by: (1) discounting Plaintiff's symptom testimony; (2) discounting the opinion of Nancy H. Maloney, M.D., an examining physician; and (3) discounting the opinion of Plaintiff's physical therapist, Kenneth Smith, LPT. As a result of these errors, Plaintiff contends the ALJ's assessment of Plaintiff's residual functional capacity ("RFC") was insufficient and, therefore, the vocational hypothetical presented to the vocational expert at the hearing was incomplete. Because the ALJ improperly discredited testimony, the Court reverses the Commissioner's final decision and remands this case for further proceedings consistent with this Opinion and Order.

## BACKGROUND

Plaintiff applied for SSI on June 6, 2011, alleging a disability onset date of May 9, 2011. Tr. 263, 298.[1] Plaintiff's application was denied initially and upon reconsideration. Plaintiff's first administrative hearing was held on February 18, 2014, before Administrative Law Judge Tom L. Morris. Tr. 71. ALJ Morris denied Plaintiff's claim in a written decision issued on May 6, 2014. Tr. 135–50. The Appeals Council reversed ALJ Morris's decision and remanded back to the ALJ to conduct another hearing and issue a new decision. Tr. 151–55.

On remand from the Appeals Council ALJ Katherine Weatherly conducted a hearing on April 22, 2016, at which Plaintiff appeared with counsel. Tr. 43–70. On May 19, 2016, ALJ Weatherly denied Plaintiff's claim in a written decision. Tr. 19–30. On February 17, 2017, the

---

[1] "Tr." refers to the administrative record transcript, filed here as ECF 9.

Appeals Council declined review, rendering ALJ Weatherly's decision the final decision of the Commissioner. Tr. 1–3.

SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. § 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must

establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R.

§ 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to

perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R.

§ 416.966.

THE ALJ'S DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity

between June 6, 2011, and January 1, 2014, the alleged period of disability. Tr. 22.

At step two, the ALJ determined Plaintiff had the following severe impairments: a

fractured right humerus, status-post right reverse shoulder arthroplasty, and osteoperosis. Tr. 22–

23.

At step three, the ALJ found Plaintiff's impairments or combination of impairments did

not meet or equal the severity of one of the listed impairments. Tr. 23.

Before step four, the ALJ determined Plaintiff had the RFC to perform a reduced range of

light work with the following limitations:

> She could lift and carry 20 pounds occasionally and 10 pounds frequently. She could
> stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday,
> and she could sit with normal breaks for a total of about 6 hours in an 8-hour workday.
> She could never overhead reach with the right arm and could perform no more than
> frequent reaching at waist level with her right arm. She had no limitation of the left upper
> extremity. She could occasionally climb ladders, ropes, or scaffolds, and she could
> occasionally crawl. She needed to avoid even moderate exposure to workplace hazards,
> such as dangerous machinery and unprotected heights.

Tr. 23–29.

At step four, the ALJ determined Plaintiff was able to perform her past relevant work as a

motor-vehicle dispatcher and service clerk. Tr. 29–30. Accordingly, the ALJ concluded Plaintiff

was not disabled. Tr. 30.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

DISCUSSION

Plaintiff contends the ALJ's decision was not supported by substantial evidence and contains legal errors. In particular, Plaintiff argues the ALJ made the following three errors. First, the ALJ improperly discredited Plaintiff's subjective symptom testimony. Second, the ALJ improperly discredited the opinion of Dr. Maloney, a physician who examined Plaintiff at the request of the Oregon Department of Human Services. Finally, the ALJ improperly discredited the opinions of Kenneth Smith, Plaintiff's physical therapist. As a result of these errors Plaintiff contends the ALJ's assessment of Plaintiff's RFC was inadequate and, therefore, the vocational hypothetical presented to the vocational expert was invalid.

## I.    Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ improperly rejected her testimony regarding the severity and extent of her limitations. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted).

As the Ninth Circuit further explained in *Molina*;

> While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (internal citations and quotation marks omitted).

At the February 14, 2014, initial hearing Plaintiff testified she was disabled as a result of a shoulder injury that she suffered after a fall in May 2011. Tr. 82–85. Plaintiff stated she had "no use of [her] right arm" as a result of that shoulder injury until she underwent and recovered from shoulder surgery in 2013. Tr. 83. Plaintiff explained that before her surgery she could only use her right arm below her elbow, but could not lift with her right arm. Tr. 83–84. Plaintiff testified the delay between her May 2011 injury and the April 2013 surgery was caused by her inability to afford the cost of the surgery and difficulty obtaining government assistance. Tr. 85–86. As of the February 14, 2014, hearing, however, Plaintiff indicated her arm was "getting better," and that she could see "some light at the end of the tunnel." Tr. 87. Accordingly, Plaintiff requested a finding of a period of disability "up until about the first part" of 2014. Tr. 97–98.

At the April 22, 2016, hearing on remand from the Appeals Council, Plaintiff's counsel formally clarified that Plaintiff only sought a closed period of disability from May 9, 2011, through January 1, 2014. Tr. 47. During the period of alleged disability, Plaintiff stated her ability to drive was "very limited," and that she only drove "maybe a quarter of a mile to the grocery store, because [she] only had the use of [her] left arm." Tr. 48. Plaintiff indicated she had difficulty preparing even simple meals and that her mother (with whom she lived during much of

the period of alleged disability) prepared the majority of the meals "because [Plaintiff] had to use just one arm." Tr. 49. Similarly, Plaintiff stated her mother did most of the laundry and vacuuming. Tr. 51. Plaintiff, however, indicated she was able to bathe and dress herself without assistance. Tr. 49. Plaintiff testified she could not use her right arm to type on a keyboard, pick up small items, or button a shirt, and that writing with her right hand was difficult. Tr. 50. Plaintiff compensated for her inability to use her right arm by using her non-dominant left arm. Tr. 51. Plaintiff again stated she did not have her shoulder surgery sooner because she did not have medical insurance until 2013. Tr. 51–52. Plaintiff testified she was able to resume working in January 2014. Tr. 52.

In her August 12, 2011, Adult Function Report, Plaintiff indicated she could not move her shoulder as a result of the fracture that she suffered. Tr. 322. Accordingly, Plaintiff reported she could no longer carry with both arms, lift, climb, perform yard work, iron, make crafts, or wash dishes. Tr. 323. Plaintiff indicated she performed personal-care activities with only her left arm, and that although she retained the ability to cook, she could only do so with her left arm and, as a result, cooking took her approximately twice as long as before her injury. Tr. 324. With respect to her ability to drive, Plaintiff reported she was "very limited" and only drove to "places very close to home such as [the] grocery store." Tr. 325.

The ALJ discredited Plaintiff's testimony because (1) the ALJ found Plaintiff's reported activities of daily living to be inconsistent with her reports of significant limitations stemming from her right shoulder injury; (2) Plaintiff's assertion that she could not afford shoulder surgery until 2013 was not credible; (3) Plaintiff indicated she looked for employment during the alleged period of disability, which the ALJ found indicated Plaintiff's application for disability was

motivated by her financial stress, not on her medical inability to work; and (4) Plaintiff's allegations were inconsistent with reports throughout the medical record.

The ALJ's finding that Plaintiff's alleged limitations were inconsistent with her reported activities of daily living is not supported by substantial evidence. Plaintiff's testimony that she was unable to perform more than very minimal activities with her right arm after her injury is largely consistent throughout the record. Although the ALJ contended Plaintiff's testimony concerning her driving and cooking activities were inconsistent with her alleged limitations, Plaintiff's testimony regarding those activities was always qualified with statements that those activities were limited by her inability to lift her right arm. Moreover, the ALJ incorrectly stated the record reflected Plaintiff "continued to use her right arm for 50% of her daily activities," when, in fact, the referenced report indicated "[f]or *greater than* 50% of activities [Plaintiff] is switching dominance to the left including driving and eating but not writing." Tr. 25, 397 (emphasis added).

Similarly, the ALJ erred when she discredited Plaintiff's allegation that she was unable to afford medical insurance or to otherwise pay for her shoulder surgery until she received state assistance in 2013. The only explanation the ALJ provided for this finding was "given the claimant's ability to afford alcohol during the period at issue, I find her allegations of poverty less than persuasive." Tr. 24. The ALJ appears to have based this explanation on a single reference in the record that one doctor "suspect[ed] that [Plaintiff] is somewhat of an alcohol abuser." Tr. 504. Even if the record sufficiently supported the ALJ's assertion that Plaintiff purchased alcohol, there is not any rational connection between the ability to purchase alcohol and the ability to obtain medical insurance or otherwise pay for serious shoulder surgery.

Accordingly, the Court concludes this reason for discrediting Plaintiff's testimony is not supported by substantial evidence.

The ALJ next discredited Plaintiff's testimony on the basis that Plaintiff indicated in a February 24, 2014, letter that "she had looked for work during the period at issue," which the ALJ took to "suggest [Plaintiff] felt she was capable of work." Tr. 25. Again, however, the ALJ mischaracterized the record. In that letter Plaintiff stated "I attempted to find employment while waiting for [g]overnment or [s]tate assistance so I could have the surgery to repair my injury, but here in Central Oregon know [*sic*] one would hire a person with the use of only one arm." Tr. 365. Contrary to the ALJ's assertion that Plaintiff's attempts to find work undermine her contention that she was unable to work due to her injury, Plaintiff's letter is consistent with her assertion that her shoulder injury rendered her unable to work.

Finally, the ALJ discredited Plaintiff's allegations on the basis of various inconsistencies that the ALJ identified between Plaintiff's testimony and the medical record. For example, the ALJ discredited Plaintiff's testimony on the basis that the record does not reflect any medical exacerbation that caused Plaintiff to go to an adult foster care facility in March 2013. Tr. 27. Plaintiff, however, did not testify that a medical exacerbation caused her to move to an adult foster care facility. Plaintiff testified that she moved into the adult foster care facility after her daughter helped her obtain state assistance, and that Plaintiff cared for herself before moving into the adult foster care facility only with the assistance of her mother. Tr. 63. Moreover, the medical record as a whole is consistent with Plaintiff's testimony that she suffered a significant shoulder injury in 2011 that required a "reverse total shoulder replacement" and caused significant limitations in the use of her dominant right arm. *See, e.g.*., Tr. 380, 385, 399, 401. Accordingly,

the Court finds the ALJ's rejection of Plaintiff's testimony on the basis of inconsistency with the medical record is not supported by substantial evidence.

On this record, therefore, the Court finds the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony.

## II.    Dr. Maloney's Opinion

Plaintiff next contends the ALJ erred when she failed to articulate legally sufficient reasons for discrediting the opinion of Dr. Maloney.

Social security law recognizes three types of physicians: (1) treating; (2) examining; and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. § 416.927(c)(1)–(2). Moreover, more weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

Dr. Maloney was an examining physician. "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* "An ALJ may reject an examining physician's opinion if it is contradicted by clinical evidence." *Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1199 (9th Cir. 2008).

As noted, Dr. Maloney examined Plaintiff on May 16, 2012, at the request of the Oregon Department of Human Services. Tr. 397. Dr. Maloney noted Plaintiff was "painful within generalized right shoulder," and that there was "slight subluxation of the right shoulder as compared to the left." Tr. 398. Dr. Maloney found Plaintiff had a "reduction in right arm strength

and occasional generalized arm numbness." Tr. 397. Dr. Maloney noted Plaintiff was switching dominance to her left arm "[f]or greater than 50% of activities . . . including driving and eating but not writing." Tr. 397. Dr. Maloney also observed Plaintiff "does not tolerate much palpation to the right shoulder." Tr. 398. In her examination of Plaintiff, Dr. Maloney found Plaintiff is "able to manipulate small items within left hand well and slowly with right hand," and is "unable to reach with the right," but is able to "perform basic hold, grip and manipulation of simple items in a slow manner." Tr. 399. Dr. Maloney found the "[r]esults of manual muscle testing correspond[ed] well with observed ability," the "[s]everity of pain experienced is generally consistent with the objective findings," and that Plaintiff's "[f]unction is limited primarily based on objective findings." Tr. 399.

The ALJ summarized Dr. Maloney's evaluation, but did not provide any reasons for discrediting her findings. Tr. 26. Moreover, after a review of the record, the Court notes Dr. Maloney's examination is largely consistent with the clinical medical evidence.

The ALJ's findings that Plaintiff is capable of a reduced range of light work, including the ALJ's finding that Plaintiff could "lift and carry 20 pounds occasionally and 10 pounds frequently" and perform "frequent reaching at waist level with her right arm" are inconsistent with Dr. Maloney's evaluation. Tr. 23. The ALJ, therefore, erred when she failed to provide legally sufficient reasons for discrediting Dr. Maloney's opinion.

### III.    Opinion of Kenneth Smith, LPT

Plaintiff next argues the ALJ erred when she discredited the opinion of Kenneth Smith, Plaintiff's physical therapist.

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists. 20

C.F.R. § 416.902. Medical sources classified as "not acceptable" or "other sources" include, but are not limited to, nurse practitioners, therapists, LCSWs, and chiropractors. SSR 06-03p, at *2. Physical therapists are also considered "other sources." *See Drake v. Comm'r of Soc. Sec*, No. 3:12–cv–02223–AC, 2014 WL 3591547, at *4 (D. Or. Jul. 21, 2014). Under Ninth Circuit law, evidence from "other sources" is considered under the same standard as that used to evaluate lay-witness testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina*, 674 F.3d at 1111 (because a physician's assistant was not an acceptable medical source, the ALJ could discount physician's assistant's opinion for germane reasons).

In a November 25, 2013, chart note, LPT Smith reported Plaintiff's injuries limited her abilities to reach, dress, lift or carry objects greater than five pounds, and to perform fine motor activities. Tr. 481. LPT Smith also indicated Plaintiff's symptoms were consistent with her shoulder injury. Tr. 581.

The ALJ gave "no weight" to LPT Smith's opinion because it was internally inconsistent with (1) Plaintiff's physical therapy treatment notes that indicated she could conduct her activities of daily living with "minimal to no pain"; (2) objective evidence from the November 25, 2013, appointment that suggested Plaintiff had improved; and (3) Plaintiff's daily and work activities in late-2013.

The Court finds the ALJ provided germane reasons to discredit LPT Smith's opinion. The ALJ reasonably found LPT Smith's assessment of Plaintiff as being unable to lift or carry more than five pounds and unable to conduct simple, everyday activities such as getting dressed as of November 2013 to be unsupported by the record. For example, by August 13, 2013, LPT Smith noted Plaintiff was "reporting minimal pain except with reaching activities," and that Plaintiff's range of motion was "moderately improving." Tr. 575. Two days later, LPT Smith reported

Plaintiff was having "decreased pain with all [activities of daily living]," and that Plaintiff was able to "wash her hair and prepare meals with minimal right shoulder pain." Tr. 577. On August 22, 2013, LPT Smith noted Plaintiff experienced right-shoulder pain "only at the extreme ranges," and found Plaintiff had fulfilled "all goals" of physical therapy. Tr. 579. Although LPT Smith noted Plaintiff's shoulder pain was recurring at the time that she re-engaged physical therapy in November 2013, the findings as to Plaintiff's shoulder range of motion are much closer to those that LPT Smith observed in August 2013 than they are to those LPT Smith observed when Plaintiff began physical therapy in early-July 2013. Tr. 557, 579, 581.

Accordingly, on this record the Court concludes the ALJ provided legally sufficient reasons to discredit LPT Smith's November 2013 opinion as to Plaintiff's functional capacity.

## IV. Remand

Because the Court concludes the ALJ's decision contained harmful legal errors and was not supported by substantial evidence in the record, the remaining question is whether this case should be remanded for further administrative proceedings or an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). The Ninth Circuit applies the "credit-as-true" rule for determining whether remand for an immediate award of benefits is proper. *Garrison*, 759 F.3d at 1020. Each of the following must be satisfied to justify an immediate award of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* Even if those requirements have been met, the district court retains the flexibility to remand the case for further proceedings, particularly where the record as a whole creates serious doubts that the claimant is disabled. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

Regarding the first factor, the Court finds the medical record is complete because Plaintiff seeks only a closed period of disability caused by an injury that has since been remedied by the April 2013 surgery. Moreover, the Court finds the medical evidence and Plaintiff's testimony all unequivocally establish that beginning in May 2011 and continuing through at least some portion of Plaintiff's recovery from her April 2013 shoulder surgery, Plaintiff was unable to use her right arm beyond that which could be accomplished while only moving her arm from her elbow down while holding her upper arm by her side.

The record, however, has not yet been sufficiently developed with regard to whether Plaintiff could work notwithstanding those limitations. Although the vocational expert testified Plaintiff could not perform her past relevant work if she was not able to frequently reach, write, or type with her dominant arm, there is not any testimony in the record about whether there would have been other jobs in the national economy that Plaintiff could have performed during the period of alleged disability. Tr. 66. For the same reason, even if the Court credited as true the improperly discredited testimony, on this record the ALJ would not necessarily be required to find Plaintiff disabled.

Accordingly, the Court concludes further proceedings are necessary to resolve (1) whether Plaintiff could perform other jobs available in significant numbers in the national economy notwithstanding her right-arm limitations after May 2011, and, if not, (2) the date on which Plaintiff's disability ended after she had sufficiently recovered from her April 2013 shoulder surgery.

CONCLUSION

For these reasons, the Commissioner's decision is reversed and remanded for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this ___ day of May, 2018.


_____
MARCO A. HERNÁNDEZ
United States District Judge